**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| PETER J. GAY, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:09-CR-0335-CAP-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:12-CV-2704-CAP-RGV |

## FINAL REPORT AND RECOMMENDATION

This matter is currently before the Court on movant Peter J. Gay's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 135], the government's response, [Doc. 141], and Gay's reply, [Doc. 142]. Following a May 22, 2013, evidentiary hearing, [Doc. 150], and having considered the motion, the evidence presented, and the parties' post-hearing briefs, [Docs. 152-54], the undersigned **RECOMMENDS** that Gay's § 2255 motion be denied.

## I.  PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned an indictment charging Gay with robbery of United States property, in violation of 18 U.S.C. § 2114(a).  [Doc. 1].  Gay pleaded not guilty, [Doc. 12], and the case initially went to trial on May 24, 2010, [Doc. 77].  However, a mistrial was declared on May 26, 2010, [Docs. 80, 82], and the case was retried beginning on June 14, 2010, [Docs. 91, 116].

Retained counsel, David H. Jones, represented Gay at trial.  [Docs. 11-12, 116, 118-19].  The jury found Gay guilty, [Doc. 96], and the Court sentenced him to 120 months of imprisonment, [Doc. 105].

Gay, still represented by Jones, filed a timely notice of appeal.  [Doc. 106].  The Eleventh Circuit recounted the evidence presented to the jury as follows:

> At approximately 10:30 a.m. on September 16, 2008, Melissa Spratling, a postal employee with the Riverdale Post Office in Atlanta, drove to a Bank of America to obtain change for the postal clerks.  When she arrived at the Bank, she parked in the back of the bank and exited her car, carrying a gray Bank of America bank bag under he[r] arm like "a football."  The bag contained approximately $850 in postal funds.  As she approached a ramp before the bank's rear door, she noticed an African-American male to her left.  Spratling thought that the man was going to open the door for her, but, because she did not want him to do so, she stepped forward to open the door herself.  She took a quick step to open the door and the man "grabbed" the bank bag from her and took off running.  Spratling described the man as 5 10" and dark complected with a clean-shaven face and hair.  She noted that he had broad shoulders and a "big neck."  He looked like a regular customer of the post office named Prince Russo, but that the robber was not Russo.  When she first saw the robber, Spratling was three feet away, but when he grabbed the bag from her, she was only six to eight inches from him and she looked at his face.  As the robber was running away, Mandy Greenway pulled into the bank parking lot in order to make a deposit on behalf of her business.  As she drove through the parking lot, she heard a "commotion" and saw a man "run across [her] car with a bank bag in his hand...."  She described the person as a tall, African-American male, dressed in all black.  Greenway did not see the robber's face.  She described the bag that the robber carried as a gray Bank of America bank bag.  Greenway made a u-turn in the bank parking lot and followed the robber in her vehicle.  The robber ran down the side of the road, and she stayed behind him in her vehicle.  She watched as he turned into an adjacent parking lot and entered the

passenger side of another vehicle. She described the vehicle as a dark gray or pewter, four-door, older model Honda Accord with tinted windows. Greenway explained that she knew that the vehicle was an older model based on her prior ownership of Honda Accords. At that point, the driver of the vehicle, an African-American male, pointed at Greenway, and she returned to the bank.

Jeffrey Adkins, a federal agent with the United States Postal Inspection Service, responded to the scene of the robbery. There, he interviewed Spratling, who described the robber as indicated above. He met with Greenway the following day, who described the getaway vehicle as a pre-1997 model Honda Accord, probably a 1990-1993 model, based on the body style and the head lights. On April 3, 2009, Agent Adkins showed Spratling a photographic array of six African-American males, which appeared to be of the same size, age, and complexion, and had similar haircuts. One of the photos was Peter Gay's. Spratling selected his photo, stating "this is the one. This is the man that robbed me." Adkins asked her if she was certain. She said, "I am a hundred percent certain."

Gay was on parole at the time of the robbery. On July 20, 2009, his parole officer, Mandy Malinofksy, Agent Atkins and other law enforcement officers, went to Gay's residence. Malinofksy searched Gay's vehicles, a Mercedes and a four-door 1992 Honda Accord with tinted windows. From the Mercedes, she recovered a gray Bank of America bank bag. In the residence, she found $3,000 in cash, "wrapped in rubber bands," in the pocket of a suit jacket in Gay's bedroom.

United States v. Gay, 423 F. App'x 873, 874-75 (11th Cir. 2011) (per curiam) (unpublished). The Eleventh Circuit affirmed Gay's conviction on April 14, 2011, id. at 877, and denied his pro se petition for rehearing on June 29, 2011, [Docs. 141-1, 141-2].

3

On August 3, 2012, Gay timely filed this pro se § 2255 motion, arguing that he received ineffective assistance of counsel when counsel (1) failed to investigate and present an alibi defense, (2) failed to investigate and present a misidentification defense, (3) ineffectively advised Gay regarding whether to testify, (4) failed to object to the trial court's questions regarding whether Gay wished to testify, and (5) ineffectively advised Gay regarding the government's plea offer and failed to make a counter offer as Gay directed.  [Doc. 135 at 4; Doc. 135-1 at 8-21].  The government filed a response contending that Gay's grounds for relief lack merit.  [Doc. 141 at 6-35].  Gay replied, reasserting the merits of his grounds for relief.  [Doc. 142 at 3-22].

The undersigned determined that an evidentiary hearing was necessary to resolve ground five, [Doc. 143], and appointed attorney Lynn Fant Merritt to represent Gay at the hearing, [Doc. 144].  An evidentiary hearing was held on May 22, 2013, [Doc. 150], and the parties have submitted post-hearing briefs, [Docs. 152-54].

4

## II.  DISCUSSION

**A.**      **Legal Standards**

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The analysis is two-pronged, but a court need not address both prongs "if the defendant makes an insufficient showing on one."  Id. at 697.  First, a defendant asserting a claim of ineffective assistance of counsel must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690.  A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) (citation omitted) ("We also should always presume strongly that

5

counsel's performance was reasonable and adequate. . . ."). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden."). In order to meet the second prong of Strickland, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

**B.    Ground One: Alibi Defense**

In ground one, Gay argues that trial counsel was ineffective for failing to investigate and present an alibi defense. [Doc. 135-1 at 8-12]. Gay further maintains that counsel failed to properly comply with Federal Rule of Criminal Procedure 12.1(a)'s requirement to notify the government of an alibi defense. [Id. at 9-10]. Gay states that he would have testified that, "after leaving work, he stopped by a

6

McDonald's for food and proceeded home where he remained." [Id. at 11]. The government responds that trial counsel did present the alibi defense that Gay provided him and that Gay suffered no prejudice. [Doc. 141 at 6-10].

Gay replies that counsel did not present an alibi defense because the Court "precluded any evidence regarding the whereabouts of Gay at the actual time of the robbery." [Doc. 142 at 4]. Gay further contends that counsel should have investigated his claim that he stopped by a McDonald's on his way home to find an "employee who would have remember[ed] Gay" and to determine "an actual time that he was at the McDonald's." [Id. at 7, 9]. However, Gay also asserts that "[a]t no time did [he] ever stated [sic] that he was actually at the McDonald's 'during the time of the robbery.'" [Id. at 8].

The record reveals that Gay's counsel filed a notice of intent to present an alibi defense, namely that, on the day of the robbery, Gay, who was employed by Georgia Oxide Corporation, "clocked out of work at 8:16 a.m." [Doc. 60 at 1]. The notice identified two witnesses: (1) Eddie Whitehead, and (2) a custodian of records. [Id. at 2]. The government moved to exclude this evidence, arguing that Gay's notice failed to comply with Rule 12.1(a)(2)(A)'s requirement that the notice state where "defendant claims to have been at the time of the alleged offense," because the offense occurred at 10:39 a.m., approximately two hours after Gay clocked out of work. [Doc. 65].

7

During the May 21, 2010, pretrial conference, defense counsel explained that the evidence he sought to introduce was "not an alibi for the time of the crime," but would be offered "simply . . . for the jurors to have a picture of what the defendant was doing on that day." [Doc. 117 at 4].  The Court granted the government's motion regarding the alibi defense, but indicated that it likely would not exclude the evidence "that some time earlier in the day [Gay] was at a certain location."  [Id. at 6].  When the government objected to Whitehead's proposed testimony at trial, the Court ruled that Gay could present his "imperfect defense" and allowed Whitehead to testify.  [Doc. 119 at 6, 16-20].

Because the jury actually heard the evidence that Gay sought to introduce pursuant to the alibi notice filed by counsel, he has not shown deficient performance by counsel or prejudice with regard to the filing of the alibi notice.  Although Gay asserts that counsel should have investigated his contention that he stopped at a McDonald's after leaving work, he also states that he was not at the restaurant at the time of the robbery, and thus, he cannot show prejudice based on counsel's failure to investigate this claim since Gay's presence at the restaurant earlier in the morning would not have established an alibi for the robbery.  Moreover, Gay has not identified any McDonald's employee who would have remembered him and testified at trial

8

regarding what time he was at the restaurant.  Accordingly, Gay is not entitled to relief as to ground one.[1]

## C.  Ground Two: Misidentification Defense

In ground two, Gay maintains that counsel was ineffective for failing to object to the Magistrate Judge's denial of his motion for funds to hire an expert to testify regarding eyewitness identification testimony and for raising the issue on appeal without having preserved it.  [Doc. 135-1 at 12-13].  The government responds that Gay fails to show prejudice as to this ground because the Court correctly concluded that he was not entitled to funds to hire an expert in eyewitness identification.  [Doc. 141 at 11-17].  Gay replies that the government's "speculation" as to the merits of an objection to the Magistrate Judge's ruling "has no place in a full and fair assessment of this claim."  [Doc. 142 at 12-13].

On February 11, 2010, Gay, through counsel, moved the Court for leave to proceed in forma pauperis so that he could retain an expert on eyewitness identification.  [Doc. 45].  The Magistrate Judge found that Gay qualified financially, but was not entitled to funds to hire an expert because the motion was untimely and because Gay had not shown that the expert testimony was "necessary for adequate

---

[1] Gay's claim regarding his desire to testify is addressed in ground three.

9

representation." [Doc. 53]. Counsel did not appeal the Magistrate Judge's ruling to the District Court, but raised the issue on direct appeal. See Gay, 423 F. App'x at 875, n.1. The Eleventh Circuit found that it lacked jurisdiction to review the issue because the District Court did not consider it. Id.

To determine whether counsel's failure to preserve an issue resulted in prejudice, the Court considers its merits. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (per curiam) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."); Payne v. United States, No. 2:09cv1040-MHT-WC, 2012 WL 666002, at *6 (M.D. Ala. Feb. 1, 2012) (stating that where a defendant would have lost on an objection to a magistrate judge's adverse recommendation had it been made, he cannot show prejudice based on counsel's failure to object), report and recommendation adopted by, 2012 WL 652091, at *1 (M.D. Ala. Feb. 29, 2012). To obtain public funds for expert services, a defendant must show that the services of the expert are "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1). "The decision to grant or deny a motion for services pursuant to Section 3006A(e) is committed to the sound discretion of the district court and may only be overturned upon a showing of abuse of that discretion." United States v. Rinchack, 820 F.2d 1557, 1563 (11th Cir. 1987) (citations omitted).

10

Gay's request for funds to hire an expert was untimely. Gay originally had ten days after his arraignment on July 23, 2009, [Doc. 12], to file motions in this case under Local Criminal Rule 12.1B,[2] but the Court later granted Gay an extension of time until August 20, 2009, to file pre-trial motions, [Doc. 26]. However, Gay did not file his motion for expert funds until February 11, 2010, [Doc. 45], nearly six months after the deadline for pre-trial motions had expired and two weeks after the Court had set a date for trial, [Doc. 38]. "A trial court is not required to grant an eleventh hour request for Section 3006A(e) services, particularly where the delay in making the request is unjustified and would require a continuance of the . . . trial." Rinchack, 820 F.2d at 1564 (citations omitted). Because Gay offered no justification for the tardiness of his motion and because granting his request would have resulted in further delay of the trial, it was not an abuse of discretion to deny the motion as untimely. See United States v. Harp, 282 F. App'x 774, 776 (11th Cir. 2008) (per curiam) (unpublished) (holding that the district court did not abuse its discretion by denying defendant's § 3006A(e) motion as untimely); Rinchack, 820 F.2d at 1564.

---

[2] LCrR 12.1B was amended effective December 1, 2009, and now requires motions to be filed in criminal proceedings within fourteen days after arraignment. LCrR 12.1B, NDGa.

Even if Gay's motion had been timely, it failed on the merits because Gay did not show that the expert services sought were necessary for an adequate defense. 18 U.S.C. § 3006A(e)(1). "A court may refuse to authorize Section 3006(A)(e) expert services on grounds that they are not 'necessary' when it concludes that the defendant does not have a plausible claim or defense." Rinchack, 820 F.2d at 1564. A defendant bears the burden to demonstrate necessity of § 3006A(e) services to an adequate defense. United States v. Pitts, 346 F. App'x 839, 841 (3d Cir. 2009) (unpublished). In the context of eyewitness identification testimony, the defendant must establish why cross-examination of the identification witness is inadequate and specify why an expert is required. Id. at 842.

In both his motion for funds and his motion to vacate, Gay failed to specify any testimony he expected the expert to offer or explain why cross-examination of the witness was inadequate. [See Docs. 45, 135-1]. Gay's general claim in his motion for funds that the expert testimony was critical to his case was "insufficient to meet [his] burden to establish a specific necessity for an eyewitness expert." Pitts, 346 F. App'x at 842. Additionally, the Eleventh Circuit "has consistently looked unfavorably on" expert testimony regarding eyewitness reliability. United States v. Smith, 122 F.3d 1355, 1357 (11th Cir. 1997) (per curiam). Accordingly, the Court did not abuse its discretion in concluding that Gay failed to meet his burden to show that the expert

12

services he sought were necessary for an adequate defense, and counsel's failure to preserve this meritless issue did not result in prejudice.  See Winfield, 960 F.2d at 974; Payne, 2012 WL 666002, at *6.

**D.     Ground Three: Counsel's Advice Regarding Gay's Right to Testify**

In ground three, Gay claims that "trial counsel ineffectively advised him not to testify, when in fact, he should have permitted him to testify," and did so in order to "cover-up" counsel's "omissions" that caused Gay to abandon his alibi and misidentification defenses.  [Doc. 135-1 at 13, 15].  Gay states that "he wanted to testify regarding his activities after leaving work" on the day of the robbery and that, after the evidence closed and the district court advised him of his right to testify, counsel advised him that it was too late to do so.  [Id.].  The government responds that Gay's assertion that trial counsel was ineffective for advising him not to testify is vague and conclusory and that Gay's claim that counsel advised him that it was too late to testify is belied by the record.  [Id. at 18-22].  Gay replies that an evidentiary hearing is necessary to resolve this ground.  [Doc. 142 at 16-17].

"Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992) (en banc).  Counsel

13

provides a defendant ineffective assistance if, for example, "counsel refused to accept the defendant's decision to testify" or "never informed the defendant of the right to testify." Id. "[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify." Id. at 1533. Thus, counsel's advise that defendant not testify, without more, does not demonstrate deficient performance.

Although the Eleventh Circuit has not specifically addressed whether a bare allegation that counsel ineffectively advised a defendant not to testify warrants an evidentiary hearing,[3] it has held that "[c]onclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (citation omitted). Moreover, other circuits have held that a defendant's conclusory allegation that counsel refused to allow him to testify at trial was insufficient to warrant a hearing. See Pagani-Gallego v. United States, 76 F. App'x 20, 23 (6th Cir. 2003) (finding defendant's bare contention "that his attorney precluded him from testifying at trial" insufficient to demonstrate ineffective assistance where

---

[3] The case on which Gay relies to support his argument that he is entitled to an evidentiary hearing, Gallego v. United States, 174 F.3d 1196 (11th Cir. 1999), rejected a "per se credit counsel in case of conflict rule" regarding credibility findings in evidentiary hearings, but did not address whether a hearing was actually required. See id. at 1198-99.

14

defendant did "not allege that he was unaware of his right to testify, that his attorney did not consult him about his decision whether or not to testify, or that his attorney intimidated him, threatened him, or otherwise interfered with his decision whether or not to testify"); United States v. Mejia, 18 F. App'x 20, 23 (2nd Cir. 2001) (holding that defendant's "self-serving" assertion that his attorney would not allow him to testify was insufficient, without more, to establish ineffective assistance of counsel); Siciliano v. Vose, 834 F.2d 29, 30-31 (1st Cir. 1987) (holding that defendant's conclusory allegation in an affidavit that counsel refused to allow him to testify at trial was insufficient to require a hearing).  Accordingly, the Court concludes that Gay's bare allegation that counsel advised him not to testify fails to demonstrate deficient performance by counsel or warrant an evidentiary hearing.

Gay's claim that counsel advised him that it was too late to testify is not supported by the record.  The Court advised Gay regarding his right to testify and stated, "Now, I have closed the evidence, but if you decide right now you want to testify in the case, I'll reopen the evidence to let you testify.  Do you wish to testify or not testify, Mr. Gay?" [Doc. 119 at 232-33].  Gay responded, "No, sir.  I waive that right at this time."  [Id. at 233].  When asked whether that was his decision, Gay responded, "Yes, sir."  [Id.].  Gay did not inform the Court of any potential disagreement with trial counsel regarding the decision to testify, and there is no

15

indication in the transcript that counsel told him that he could not testify or that it was too late to testify. Even had counsel made such a statement, the Court affirmatively stated the opposite, giving Gay a chance to testify, but he declined. Accordingly, Gay fails to show deficient performance by counsel or prejudice as to this ground.

**E.**    **Ground Four: Court's Questions Regarding Gay's Right to Testify**

In ground four, Gay contends that trial counsel's failure to object to the Court's questions concerning Gay's decision not to testify constituted deficient performance because the Court's questions "improperly disturb[ed] the attorney-client relationship" and suggested that the Court believed Gay's choice "improvident." [Doc. 135-1 at 15-17]. The government responds that trial counsel was not ineffective for failing to object to this routine questioning by the Court and that Gay suffered no prejudice. [Doc. 141 at 22-28]. Gay's reply adds nothing significant to his initial argument as to this ground. [Doc. 142 at 19-20].

Gay has not shown that counsel erred by not objecting to the Court's questioning of Gay nor does he explain how the outcome of his trial would have been different had counsel objected and had the Court refrained from questioning Gay. In fact, Gay does not allege that the Court's questions actually influenced his decision to not testify. Rather, the Court's colloquy and questioning of Gay ensured that he understood his right to testify or not testify and eliminated any confusion claimed by Gay about

16

whether it was too late for him to testify.  Accordingly, the Court finds that Gay has not shown deficient performance by counsel or prejudice as to this ground.

## F.   **Ground Five: Plea Negotiations**

### 1.   **Summary of Relevant Evidentiary Hearing Testimony**

On direct examination, Gay testified that he rejected the government's eight-year plea offer and that Jones never discussed with him the possibility of pleading guilty without a plea offer.  [Doc. 150 at 6].  Gay asserted that he would have entered a plea without an agreement had he understood that he did not have a valid alibi defense and that Jones would not call an eyewitness identification expert.  [Id. at 8].  Gay did not testify as to what counsel's advice was regarding the statutory maximum penalties and the sentencing guidelines range he faced.

On cross-examination, Gay admitted that, on at least three occasions in the past, he gave a false name to law enforcement.  [Id. at 11].  Gay then testified that he asked Jones to present a counteroffer to the government of two to three years after he rejected the eight-year offer and that Jones never informed him whether the government had rejected that offer, even after he specifically asked counsel about it.  [Id. at 13-14].  Gay claimed that he also asked Jones to present a six-year offer.  [Id. at 14].  Gay admitted that, although he wrote a letter to Jones asking him to make a three-year counteroffer, he does not have anything in writing indicating that he wanted to make

17

a six-year counteroffer.  [Id. at 14-15].  Gay also testified that he was at home at the time of the robbery.  [Id. at 17].  Gay then acknowledged that he could not have admitted to committing the robbery because he would have been lying.  [Id.].  On questioning from the Court, Gay clarified that he asked for the three-year counteroffer before he asked for six years.  [Id. at 19-20].

Jones testified that his normal practice with regard to plea offers is to first discuss the strengths and witnesses of the case with his client and to explain that the client cannot plead guilty if they cannot admit to committing the crime.  [Id. at 21-22].  Jones also testified that he quickly communicates any plea offer to his client and, if asked, presents a counteroffer to the government.  [Id. at 22-23].  Jones stated that he met with Gay at least ten times.  [Id. at 24-25].  During one such meeting, Jones reviewed the discovery, the government's case, and possible defenses with Gay and advised him that he should consider a plea because "it would be a long shot to win" and, if he lost at trial, he would almost certainly "max out on whatever sentence he could receive" due to his criminal history.  [Id. at 25-26].  Gay expressed some interest in pleading guilty, but did not indicate what he would be willing to plead to during that initial discussion.  [Id. at 26].

Jones later presented the government's eight-year offer to Gay, who rejected the offer and indicated that he would be willing to accept a two-year plea.  [Id. at 27-28].

18

Jones responded that "it was [his] opinion that the government would never agree to that but [he] would communicate it to them."  [Id. at 28].  During this conversation, Gay did not ask counsel to convey an offer of six or three years.  [Id.].

Jones presented the two-year counteroffer to the government, and it was rejected.  [Id. at 29].  Jones discussed with the government the possibility of a six-year deal, and the government expressed interest in whether Gay "was willing to cooperate in any way," but did not expressly accept six years.  [Id.].  Jones then discussed this possibility with Gay, explaining that he "thought that if [Gay] provided information to the government they might be willing to come down to a six- to seven-year offer of a binding plea."  [Id.].  Gay responded that "[h]e was not willing to cooperate and he was not willing to plead to six or seven years."  [Id. at 30].

Jones later received a letter from Gay indicating that he would be willing to enter a binding plea to three years of imprisonment followed by two on supervised release.  [Id. at 30].  Jones conveyed this offer to the government, who rejected it and "was never willing to come down from the eight years."  [Id.].  Jones informed Gay of the government's position, and he responded that they "were going to trial."  [Id.].  Gay never indicated to Jones that he was willing to enter a straight-up plea.  [Id. at 31].

On cross-examination, Jones testified that he probably did not discuss the possibility of a straight-up plea with Gay because counsel believed that "the only plea

19

that would benefit [Gay] would be a binding plea because with his history and the maximum sentence . . . being ten years, he was certain on a straight-up plea to get ten years." [Id. at 32].  This was based on counsel's belief that Gay's career offender guidelines range would be higher than ten years.  [Id.].

>    2.   **Analysis**

In his motion to vacate, Gay argued that Jones provided him ineffective assistance in connection with his decision to proceed to trial because (1) Jones' incorrect advice to Gay that he faced a statutory maximum sentence of twenty-five years of imprisonment and a guidelines range of 262 to 300 months as a career offender caused Gay to reject the government's eight-year plea offer, and (2) Jones failed to make a six-year counteroffer as Gay directed.  [Doc. 135-1 at 17-18, 21]. However, at the evidentiary hearing and in his post-hearing briefs, Gay abandoned these claims and instead asserted that Jones was ineffective for not discussing the possibility of a plea without an agreement.  [Doc. 150 at 6; Doc. 152 at 3-5, 7; Doc. 154 at 8].

Defense counsel is ineffective by providing defendant incompetent advice to reject a favorable plea offer.  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). In order to establish prejudice based on a rejected plea offer,

a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court ( i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 1385.

The Court does not find Gay's testimony credible, especially given that he presented an entirely new claim at the hearing, i.e., that counsel should have discussed with him the possibility of a straight-up plea, and did not offer any testimony as to his initial contention that counsel erroneously advised him that he faced a possible 262-month sentence under the guidelines.[4]  Gay's credibility is further undermined by the fact that he admits to having provided false information to law enforcement on at least three occasions, still maintains his innocence, and acknowledges that he could not have admitted to committing the robbery because he would have been lying.  [Doc. 150 at 11, 17].  Gay's continued assertion of his innocence is inconsistent with his latest claim

_____

[4] Moreover, Gay's initial claim that he was deterred from accepting a guilty plea by Jones' allegedly erroneous overestimation of the sentence he faced if convicted is illogical.  If Gay erroneously believed that he may receive a greater sentence than he actually faced if convicted, it would make the government's plea offer of eight years even more attractive, yet Gay turned it down because he was not willing to accept any deal that required more than three years of imprisonment.

21

that he would have been interested in a straight-up plea.  See Ray v. Wolfenbarger, No. 08-cv-11415, 2011 WL 839173, at *8 (E.D. Mich. Mar. 7, 2011) ("Where a petitioner presses his innocence even after trial, courts generally find little likelihood that the petitioner would have pleaded guilty if given constitutionally adequate advice.").

The Court finds Jones, whose testimony was very clear and unequivocal, to be a more credible witness.  Accordingly, the Court credits Jones' testimony that he advised Gay that "it would be a long shot to win" and, if Gay lost at trial, he would almost certainly "max out on whatever sentence he could receive."  [Id. at 25].  Despite this advice, Gay rejected the government's eight-year offer because he wanted a lesser sentence.  When counsel discussed with him the possibility of a six-year deal, which counsel had presented to the government on his own initiative, Gay refused to cooperate and would not even consider six years.  Gay was only ever willing to accept a three-year deal, which the government rejected.  In sum, Gay was advised that his chances of prevailing at trial were low and that he faced a much longer sentence if he lost at trial than if he pleaded guilty.  Knowing this, Gay voluntarily chose to proceed to trial.

Based on these findings, the Court concludes that Jones provided Gay effective assistance.  Moreover, Gay's "after the fact testimony" that he would have been willing to enter a straight-up plea had counsel advised him of the possibility, "without more,

22

is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991). Accordingly, the Court finds that Gay is not entitled to relief as to ground five.

## III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Gay's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

## IV.  CONCLUSION

For the foregoing reasons,  **IT IS HEREBY RECOMMENDED** that this 28 U.S.C. § 2255 motion to vacate sentence, [Doc. 135], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 11th day of October, 2013.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

24